<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DERANIE A., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security <br><br> Defendant. | Case No. 2:23-cv-03157-BRM <br><br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Deranie A.'s ("Plaintiff") appeal (ECF No. 1) of the final decision of the Acting Commissioner of Social Security ("Commissioner")[1] denying her application for Social Security Disability Insurance Benefits ("SSDI") under Title II of the Social Security Act ("Act"). Having considered the submissions of the parties without oral argument, for the reasons set forth below and for good cause shown, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND**

This case arises out of Plaintiff's challenge to the administrative decision of the Commissioner denying her application for SSDI benefits. (ECF No. 1; Tr. at 16–27.) Plaintiff filed a Title II application for a period of disability and SSDI benefits on March 19, 2020, alleging onset

---

[1] Upon the Appeals Council's Order denying Plaintiff's request for a review of the decision of the Administrative Law Judge ("ALJ"), the ALJ's decision became the final decision of the Commissioner. (ECF No. 3 (Transcript of Proceedings ("Tr.")) at 1.)

of disability on January 6, 2019 (Tr. at 16) based on high platelets (thrombocytopenia), hydrocephalus, sleep apnea, osteoarthritis, and stomach polyps. (*Id.* at 199.)

The Social Security Administration ("SSA") initially denied Plaintiff's claims on October 20, 2020 (*id.* at 82–86) and upon reconsideration on February 26, 2021 (*id.* at 89–91). On February 25, 2022, Plaintiff appeared and testified at a hearing before Administrative Law Judge Kevin Kenneally ("ALJ Kenneally"). (*Id.* at 32–60.) At the hearing, Plaintiff testified to her prior work and to her history of treatment, as well as the symptoms of her conditions, including memory issues, sleep difficulties, fatigue, incontinence, and vision impairment. (*Id.*) An impartial vocational expert also appeared and testified at the hearing. (*Id.*)

On March 11, 2022, ALJ Kenneally issued a decision finding Plaintiff was not disabled under the Act. (*Id.* at 13–27.) ALJ Kenneally considered the entire record in making his decision. (*Id.* at 18.) At step one, ALJ Kenneally found Plaintiff had not engaged in substantial gainful activity since January 6, 2019. (*Id.* at 19.) At step two, ALJ Kenneally found Plaintiff had the following "severe medical impairments": "thrombocythemia essential; major depressive disorder and generalized anxiety disorder with panic attacks." (*Id.* at 19.) At step three, ALJ Kenneally did not find the Plaintiff to have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.*) At step four, ALJ Kenneally found Plaintiff had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except the individual can frequently push, pull and operate foot controls with the right lower extremity; she can frequently climb ramps and stairs; she can never climb ropes, ladders or scaffolds; she can frequently balance, stoop, kneel, crouch and crawl; the individual can never be exposed to unprotected heights, moving mechanical parts or operate a motor vehicle; she must have access to a bathroom at the work site; she is limited to performing simple, routine tasks and making

>   simple work related decisions; she can frequently interact with the general public, co-workers and supervisors; and in addition to normal breaks she would be off task 5% of the time in an eight-hour workday.

(*Id.* at 21–22.) Finally, at step five, ALJ Kenneally found that, based on Plaintiff's age, education, work experience, and RFC "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 26.) Specifically, ALJ Kenneally found Plaintiff could perform the roles of "Linen Room Attendant, DOT 222.387-030 . . . Bagger, Grocery and Retail, DOT 920.687-014 . . . [and] Hand Packager, DOT 920.587-018" among other jobs. (*Id.* at 26–27.)

Plaintiff submitted a Request for Review of the Hearing Decision to the Appeals Council on May 4, 2022. (*Id.* at 175–78.) On April 10, 2023, the Appeals Council denied Plaintiff's request for review of ALJ Kenneally's decision. (*Id.* at 1–7.) On June 8, 2023, Plaintiff filed a civil action in the United States District Court for the District of New Jersey seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 1383(c)(3). (ECF No. 1.)

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. *Id.*; *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial

3

evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, if the ALJ's decision is supported by substantial evidence, the Court may not set the ALJ's decision aside "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSDI to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSDI. 20 C.F.R. § 404.1520. First, the ALJ

determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.*; *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits their physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § 404, Subpart P, App'x 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairments are equal in severity to, or meet, those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, the ALJ then must consider whether the combination of

impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d, 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e)–(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at Section 404.1527 (for claims filed before March 27, 2017) or Section 404.1520c (for claims filed after March 27, 2017).

The claimant is not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the claimant's RFC prevents him or her from doing so, an ALJ proceeds to the fifth and final step of the process. *Id.* The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.*; 20 C.F.R. § 404.1523.

6

Notably, an ALJ typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146–47 n.5. An ALJ bears the burden of proof for step five. *Id.* at 263.

On appeal, the harmless error doctrine[2] requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than

---

[2] The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556 U.S. 396, 408–11 (2009) which concerned review of a governmental agency determination. The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410.

7

a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## IV. DECISION

### A. Step Two Exclusion of Hydrocephalus

Plaintiff argues ALJ Kenneally committed reversible error by failing to consider her hydrocephalus in his step two findings. (ECF No. 5-1 at 9.) Plaintiff claims the hydrocephalus is "clearly a medically determinable impairment (MDI) . . . as it is conclusively noted on the CT scan and the MRI of the brain." (*Id.*) Plaintiff asserts that because the hydrocephalus was an MDI, it must be considered as part of the RFC determination and at step two. (*Id.* at 10.)

The Commissioner argues it is Plaintiff's burden to furnish evidence "supporting the existence of [a] condition and the effect of that condition on the claimant's ability to work on a sustained basis." (ECF No. 7 at 5 (quoting *Wimberly v. Barnhart*, 128 F. App'x 861, 863 (3d Cir. 2005)). Here, the Commissioner claims Plaintiff has failed to furnish evidence regarding the impact of the alleged symptoms of the hydrocephalus. (*Id.* at 5–6.) Rather, Plaintiff references a website listing potential symptoms of hydrocephalus without showing how the condition significantly limited her work activities. (*Id.* at 6.) The Commissioner claims MRIs showed Plaintiff's hydrocephalus was largely stable and did not warrant the placement of a shunt. (*Id.*) Moreover, the Commissioner asserts Plaintiff did not complain of fatigue or weakness, had generally normal memory, "had largely intact strength, ambulated independently, could heel and toe walk with a normal station, and had normal reflexes and coordination." (*Id.*) Therefore, the

Commissioner claims Plaintiff did not show how her hydrocephalus limited her basic work activities. (*Id.*)

Plaintiff responds that her appeal of ALJ Kenneally's decision is not primarily a step two challenge, although Plaintiff does argue ALJ Kenneally should have found the hydrocephalus severe. (ECF No. 8 at 2.) Plaintiff further argues ALJ Kenneally's failure to explain why he did not include symptoms from the hydrocephalus in the RFC is reversible error. (*Id.*)

To the extent Plaintiff asserts, either explicitly or by implication, a challenge to ALJ Kenneally's decision based on his failure to consider Plaintiff's hydrocephalus at step two, the Court finds any such failure is not reversible error, as it well-established that the failure to identify a condition at step two is harmless error where other severe impairments are identified, and all MDIs are ultimately accounted for in the RFC. *See Richards v. Astrue*, Civ. A. No. 3:2008–284, 2010 WL 2606523, at *6 (W.D. Pa. June 28, 2010) ("Where at least one impairment is found to be 'severe' and all limitations (including those resulting from 'non-severe' impairments) are reflected in the ultimate residual functional capacity determination, any error committed at the second step of the sequential evaluation process can fairly be characterized as harmless."); *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015) ("Accordingly, not finding certain impairments severe at step two does not affect the ultimate disability determination. Where an ALJ finds in a claimant's favor at step two, 'even if he . . . erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless.'" (quoting *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir.2007))); *Donna M. v. O'Malley*, Civ. A. No. 23-1760, 2024 WL 2130694, at *7 (D.N.J. May 13, 2024) ("Normally, when an ALJ finds at least one severe medical impairment at step two and continues onto the other steps, the ALJ's failure to consider other medically determinable impairments or find that a particular impairment

to be non-severe is a harmless error."). Here, although ALJ Kenneally did not discuss the hydrocephalus at step two, he considered the condition in formulating the RFC. (Tr. at 22.) Therefore, to the extent ALJ Kenneally did not consider hydrocephalus at step two, the Court finds this is harmless error.

### B. Whether Substantial Evidence Supported the RFC Determination

#### 1. Briefing

Plaintiff claims ALJ Kenneally's RFC determination was not supported by substantial evidence because there was no physician assessment of Plaintiff's basic strength functions. (ECF No. 5-1 at 11–12.) Plaintiff argues ALJ Kenneally did not give a clear explanation for concluding Plaintiff could perform medium work. (*Id.* at 12.) Plaintiff asserts she was not asked questions regarding her strength and there was no medical evidence presented on the issue. (*Id.* at 13.) Plaintiff claims ALJ Kenneally made no attempt to connect the medical evidence to his conclusion that Plaintiff could perform medium work. (*Id.*) Plaintiff asserts ALJ Kenneally's "decision simply lacks any articulation whatsoever as to how or what evidence supports the RFC found." (*Id.*) Plaintiff claims the lack of "more aggressive" treatment or the lack of "more serious signs, findings or symptoms" do not sufficiently support the RFC determination, as the lack of contrary evidence does not constitute "substantial evidence" supporting the ALJ's findings. (*Id.*) Plaintiff speculates the RFC determination may have been "designed to deny" her claim, noting that an RFC for light work along with the other limitations would have led to a favorable disability determination. (*Id.*)

Specifically, Plaintiff argues the ALJ failed to consider the symptoms of her hydrocephalus in the RFC. (*Id.* at 14–15.) For instance, although ALJ Kenneally stated that there was evidence from the treatment notes suggesting Plaintiff did not have substantial difficulty walking, Plaintiff argues this was a "cherry picking" of the evidence that does not constitute substantial evidence.

10

(*Id.* at 15.) Plaintiff also asserts ALJ Kenneally failed to consider the relationship of Plaintiff's fall to her hydrocephalus. (*Id.*) Plaintiff further claims there is "no articulation as to how a person with [her] history of falling and difficulty ambulating could sustain the standing and walking required of medium work, and of course the same is even more true for the lifting and carrying requirements." (*Id.*) Plaintiff also argues ALJ Kenneally did not address her complaints of fatigue and memory loss from the hydrocephalus. (*Id.* at 16.) Therefore, Plaintiff claims ALJ Kenneally failed to indicate the medical evidence he relied upon in making his strength determination. (*Id.*) Finally, Plaintiff asserts ALJ Kenneally failed to support his off-task percentage with substantial evidence, as "[t]here is no indication how or why he came up with 5% off task, though it is conveniently less than the 10% that the vocational witness found would be work preclusive." (*Id.* at 17.)

The Commissioner emphasizes that the RFC determination reflects the most a claimant can still do despite their impairments. (ECF No. 7 at 6.) The Commissioner asserts an ALJ may make findings "implicitly" in a disability determination. (*Id.* at 7.) The Commissioner argues ALJ Kenneally considered Plaintiff's medical history and other evidence in determining the RFC, including "Plaintiff's reports of balance and gait difficulties, minimal weight lifting, fatigue, and memory trouble." (*Id.* at 7–8.) The Commissioner claims ALJ Kenneally considered treatment notes regarding Plaintiff's walking, including notes indicating an unstable gait and others indicating a normal gait, as well as treatment notes from the John Theurer Cancer Center reporting Plaintiff as generally "feeling well" without "complaints of significant fatigue, headaches, fevers, chills, weight loss, early satiety or abdominal distention." (*Id.* at 8.) The Commissioner further argues ALJ Kenneally considered evidence regarding Plaintiff's alleged leg weakness, including notes that by the time she received treatment, she was feeling "much better" and was not

11

experiencing difficulty ambulating. (*Id.*) The same notes further found Plaintiff "had full strength in all four extremities, normal muscle bulk and tone, normal reflexes and coordination, and a normal sensory examination." (*Id.*) Therefore, the Commissioner claims the treatment notes showed the "overall record" was "largely unremarkable" and did not demonstrate significant complications from Plaintiff's hydrocephalus or thrombocytosis. (*Id.*)

Overall, the Commissioner argues that, based on the medical evidence, ALJ Kenneally reasonably found Plaintiff was not disabled. (*Id.*) In particular, the Commissioner notes ALJ Kenneally found that "[i]f the claimant's physical and mental conditions were disabling, it would be expected that her treatment would be more aggressive and the medical evidence of record would document more serious signs, findings and symptoms." (*Id.* at 9 (quoting Tr. at 25).) The Commissioner further notes ALJ Kenneally considered Plaintiff's daily activities in determining the RFC, including that she "prepared simple meals, handled light cleaning and laundry, walked . . . drove a car . . . shopped in stores and talked on the phone." (*Id.*) The Commissioner argues ALJ Kenneally found Plaintiff had severe impairments with resulting limitations despite state agency opinions finding Plaintiff's conditions were not severe. (*Id.*)

The Commissioner also claims the RFC off-task percentage was calculated "to avoid exacerbation of [Plaintiff's] complaints." (*Id.* at 10.) The Commissioner argues ALJ Kenneally did not "cherry-pick" from the record, but rather summarized the evidence on which his findings were based, including evidence regarding Plaintiff's fall. (*Id.*) Finally, the Commissioner argues ALJ Kenneally implicitly considered record evidence regarding Plaintiff's strength, including notes suggesting "largely intact strength in all four extremities and normal muscle bulk and tone." (*Id.* at 10–11.)

Plaintiff replies that the standard ALJ decision format is insufficient because it does not specifically cite to record evidence and link the ALJ's findings to the evidence. (ECF No. 8 at 1– 2.) Plaintiff claims that although ALJ Kenneally's RFC determination mentions her hydrocephalus, it does not explain why it was ultimately not included in the final RFC determination. (*Id.* at 2.) Plaintiff argues ALJ Kenneally never made a clear connection between the record evidence and his RFC determination, despite claiming to have considered the entire record. (*Id.*) Plaintiff asserts that the language of ALJ Kenneally's decision could support a variety of time-off percentages and does not make clear why a time-off percentage of 5% was selected. (*Id.* at 3.)

### 2. Analysis

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "[I]n making a[n] [RFC] determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Although an ALJ is required to "consider all evidence before him" and "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence" *Burnett*, 220 F.3d at 121, the indication of the ALJ's reasoning may be "implicit" in the decision. *See Smith v. Astrue*, 961 F. Supp. 2d 620, 652 (D. Del. 2013) ("Plaintiff is correct that the ALJ failed to explicitly assess the credibility of Mrs. Smith's testimony or assign her testimony a particular amount of weight. However, a fair reading of the ALJ's decision suggests that the ALJ

13

did implicitly make these judgments."); *Diciano v. Comm'r of Soc. Sec.*, Civ. A. No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) (finding that, although the RFC did not specifically mention the "functions of sitting, standing, walking, lifting, carrying, or pushing . . . that does not mean the ALJ did not 'consider' those functions. This is because implicit in the finding that Plaintiff is capable of performing work at all exertional levels is that Plaintiff has no limitations in those areas"); *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("We conclude that . . . the ALJ's discussion of the evidence in the record that implicitly supported Dr. Rohar's criticism provided a reasonable basis for the ALJ not to include a limitation in the RFC about Wise's inability to adapt to normal work pressures or changes."). Therefore, it is sufficient for the RFC determination to be supported by "substantial evidence" in the entire record, and it is unnecessary for the ALJ to engage in an explicit "function-by-function" analysis where the reasoning for the decision is implicit in the record. *Glass v. Comm'r of Soc. Sec.*, Civ. A. No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("Contrary to Plaintiff's assertion otherwise, the . . . Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record."); *Donna R. v. Kijakazi*, Civ. A. No. 20-15449, 2022 WL 13009149, at *12 (D.N.J. Oct. 21, 2022) ("Although the ALJ did not expressly weigh Dr. Brown's opinions at step four, the ALJ's discussion at step two demonstrates that he implicitly discounted that examiner's opinions when assessing Plaintiff's limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace."); *Sheppard v. Comm'r of Soc. Sec.*, Civ. A. No. 19-18206, 2020 WL 5652450, at *5 (D.N.J. Sept. 23, 2020) ("Here, the RFC did not specifically reference the four non-exertional functions, but that does not mean the ALJ did not consider those

functions, singularly or in combination with Plaintiff's other limitations from her various impairments.").

Here ALJ Kenneally both implicitly and explicitly considered the symptoms of Plaintiff's hydrocephalus, the impact of her fall, and her strength diagnoses in the RFC determination. ALJ Kenneally begins his decision by noting that he considered the "entire record" in the case and clearly states the RFC was based on this consideration. (Tr. at 18, 21.) ALJ Kenneally further indicates he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "medical opinion(s) and prior administrative medical finding(s)." (*Id.* at 22.) ALJ Kenneally also specifically notes Plaintiff's allegation of "hydrocephalus" in his RFC decision. (*Id.*) He further discusses Plaintiff's concern about walking alone without support, and Plaintiff's assertion that "she could lift less than ten pounds and cannot squat." (*Id.*) ALJ Kenneally ultimately does not fully accept these allegations due to finding that Plaintiff's subjective account of her symptoms is not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 23.) The decision, per 82 FR 15263, does not provide articulation on medical opinions discussing issues reserved for the Commissioner's decision. (*Id.* at 24.) The decision indicates the time-off percentage, along with other limitations, is calculated to "avoid exacerbation of [Plaintiff's] complaints." (*Id.* at 25.) ALJ Kenneally supports his ultimate finding that Plaintiff is not disabled by noting "[i]f the claimant's physical and mental conditions were disabling, it would be expected that her treatment would be more aggressive and the medical evidence of record would document more serious signs, findings and symptoms." (*Id.*)

The Court finds ALJ Kenneally's RFC determination is supported by substantial evidence, as a fair reading of the decision shows that he did consider Plaintiff's walking ability,

15

hydrocephalus symptoms, and strength ability in his assessment. ALJ Kenneally's discussion of the entire record (*id.* at 18, 21), noting of Plaintiff's hydrocephalus complaints (*id.* at 22), assessment of Plaintiff's concern about walking alone and ability to lift (*id.*), evaluation of treatment records regarding Plaintiff's walking and leg strength (*id.*), and other considerations of the record, show that all of Plaintiff's symptoms were implicitly and explicitly considered in the RFC determination. *See Smith* 961 F. Supp. 2d at 652; *Diciano*, 2019 WL 6696523, at *5; *Wise*, 626 F. App'x at 360. To the extent Plaintiff alleges ALJ Kenneally did not engage in a detailed "function-by-function" assessment in his RFC analysis, such an assessment is unnecessary where, as here, there are implicit and explicit indications of the ALJ's reasoning in the record. *Glass*, 2019 WL 5617508, at *8; *Donna R.*, 2022 WL 13009149, at *12; *Sheppard*, 2020 WL 5652450, at *5; *Malcolm v. Comm'r of Soc. Sec.*, Civ. A. No. 16-8646, 2017 WL 5951703, at *19 n.14 (D.N.J. Nov. 30, 2017) (finding that "the Third Circuit does not require strict adherence to the function-by-function analysis set forth in Social Security Ruling 96–8p").

Accordingly, the Court finds there is substantial evidence supporting ALJ Kenneally's RFC determination and does not vacate the decision on this basis.

    **C.**    **Whether the ALJ Adequately Completed the Record**

Plaintiff argues ALJ Kenneally failed to adequately complete the record because he did not question her regarding her ability to "sit, stand, walk, or carry" and the written forms she filled also did not elicit this information. (ECF No. 5-1 at 17.) Plaintiff also argues ALJ Kenneally should have obtained further opinion evidence regarding these strength functions. (*Id.* at 18.) Plaintiff claims it was impossible for ALJ Kenneally to determine her RFC without adequate lay or medical evidence regarding her baseline functional capacity. (*Id.*) Plaintiff asks the Court to remand the matter to the ALJ with the instruction to "undertake one or more of the options available to him

under 20 CFR §1520b(2), specifically, recontacting a treating source, sending the plaintiff for a consultative exam, or obtaining an opinion from a medical advisor either by interrogatories or at a supplemental hearing." (*Id.*) Plaintiff asserts ALJ Kenneally had a duty to complete the record despite her being represented by counsel, as the administrative hearing is not an adversarial proceeding. (*Id.*)

The Commissioner notes that Plaintiff's counsel stated there was "nothing outstanding" after reviewing the record at the administrative hearing. (ECF No. 7 at 11.) The Commissioner asserts ALJ Kenneally's decision was based on a substantial record including hundreds of pages of medical evidence. (*Id.*) The Commissioner argues the burden of production and proof in a disability determination lies with the claimant, as the claimant is best placed to produce evidence about their own medical condition. (*Id.*) Moreover, when a claimant is represented by counsel, the ALJ is "entitled to assume that the applicant is making his [or her] strongest case for benefits." (*Id.* (quoting *Glenn v. Sec'y of Health & Hum. Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). The Commissioner asserts the record contained hundreds of pages of generally unremarkable examination results, as well as Plaintiff's treatment history, incomplete physical therapy, and testimony about Plaintiff's hobbies and daily activities. (*Id.* at 11–12.) Therefore, the Commissioner argues there was no reason for ALJ Kenneally to seek additional evidence. (*Id.* at 12.)

Plaintiff replies that the response of her counsel that there was "nothing outstanding" in the record "does not override the ALJ's duty to complete the record" because the statement was made in response to a question regarding whether the record should be held open, not if the record was complete. (ECF No. 8 at 3–4.) Therefore, the question does not provide an opportunity for counsel to request the ALJ to seek additional opinion evidence, as the question only refers to evidence that

has been requested but not received. (*Id.* at 4.) Ultimately, Plaintiff argues it was the responsibility of ALJ Kenneally, not Plaintiff's counsel, to ensure the record was adequate. (*Id.*)

Here, the Court has found that substantial evidence supported ALJ Kenneally's RFC determination, meaning that ALJ Kenneally did not need to request additional evidence before reaching his decision. Courts have consistently held that an ALJ need not request additional evidence where the ALJ's decision is otherwise supported by substantial evidence. *See Hubbard v. Comm'r of Soc. Sec.*, Civ. A. No. 20-00206, 2021 WL 3891598, at *10 (E.D. Tenn. Aug. 31, 2021) (holding that the ALJ need not have requested additional evidence as "the ALJ's thorough opinion demonstrates that he considered the entire record before he determined that there was [in]sufficient evidence to conclude that Plaintiff did qualify as disabled"); *Campbell v. Kijakazi*, Civ. A. No. 22-00013, 2023 WL 2139217, at *7 (E.D. Mo. Feb. 21, 2023) (holding that "a claimant's failure to provide medical evidence should not be held against the ALJ when there is medical evidence that supports the ALJ's decision"); *Sam v. Comm'r of Soc. Sec.*, Civ. A. No. 20-00658, 2021 WL 2174788, at *7 (W.D. La. May 4, 2021) ("In other words, if the record contains sufficient evidence for the ALJ to make an informed decision, the ALJ need not develop the record further."). Therefore, because the Court already held ALJ Kenneally's RFC determination was based on sufficient evidence, the Court does not find ALJ Kenneally should have requested additional evidence for the record.

## V. CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Kenneally erred in determining Plaintiff was not disabled under the Social Security Act. Therefore, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFIRMED**. An appropriate Order follows.

Date: August 5, 2024                         */s/ Brian R. Martinotti*_____
                                                                                         HON. BRIAN R. MARTINOTTI
                                                                                         UNITED STATES DISTRICT JUDGE